1

2

3                          UNITED STATES DISTRICT COURT

4                                DISTRICT OF NEVADA

5                                       * * *

6    MICHAEL ESTES,                              Case No. 3:21-cv-00338-MMD-CSD

7                              Plaintiffs,                ORDER
           v.
8
     CALVIN JOHNSON,[1] et al.,
9
                               Defendants.
10

11   **I.      SUMMARY**

12          *Pro se* petitioner Michael Estes, an individual incarcerated at High Desert State

13   Prison, initiated a habeas corpus action under 28 U.S.C. § 2254 ("Petition"). Before the

14   Court is Respondents' Motion to Dismiss the Petition (ECF No. 13 ("Motion to Dismiss"))

15   and Motion for Leave to File Exhibit Under Seal (ECF No. 17). Estes did not file an

16   opposition to either motion. For the reasons discussed below, the Motion for Leave to File

17   Exhibit Under Seal will be granted and the Motion to Dismiss will be granted in part and

18   denied in part.

19   **II.     BACKGROUND**

20          In his Petition, Estes challenges his convictions and sentences, under a plea

21   agreement, imposed by the Eight Judicial District Court for Clark County, Nevada, for

22   charges stemming from domestic violence. (ECF Nos. 7, 16-6 at 4–7.)

23          **A.     Guilty Plea**

24          A 2016 information charged Estes with three counts: (1) attempted murder; (2)

25

26          [1]According to the Nevada Department of Corrections ("NDOC") inmate locator
     page, Estes is incarcerated at High Desert State Prison. The NDOC website reflects
27   Calvin Johnson is the warden of that facility. *See* State of Nevada Department of
     Corrections, *High Desert State Prison* (last visited Oct. 28, 2022),
28   https://doc.nv.gov/Facilities/HDSP_Faciltiy/. The Court therefore directs the Clerk of
     Court to substitute Calvin Johnson for Respondent Warden William Gittere under Federal
     Rule of Civil Procedure 25(d).

1   battery resulting in substantial bodily harm constituting domestic violence; and (3)

2   mayhem. (ECF No. 14-13.) At calendar call on April 16, 2018, the parties filed a guilty

3   plea agreement ("Agreement"), in which Estes consented to plead guilty to all three

4   charges. (ECF Nos. 15-5, 15-6 at 3.) According to the Agreement, the parties stipulated

5   that Estes would be sentenced as a large habitual criminal, and that they would jointly

6   recommend concurrent sentences of 10 to 25 years for Counts 2 and 3. (ECF No. 15-5

7   at 2–3.) The parties each retained the right to argue for an appropriate sentence for Count

8   1. (*Id.*) The consequences of pleading guilty, including the minimum and maximum

9   sentencing possibilities for each count, are set forth in the Agreement. (*Id.* at 3–4.)

10          During Estes's change of plea colloquy, Estes confirmed he was 34 years old, had

11  graduated from school, could read and write English, and that he had read, understood,

12  and signed the Agreement. (ECF No. 15-6 at 4–5, 9.) However, while the state district

13  court summarized the sentencing terms of the Agreement, Estes indicated he did not

14  understand the Agreement:

15
16          THE COURT: Have you had an opportunity to review the Information
            in this case, which charges you with 1 count of attempt murder, a B
17          felony, 1 count of battery resulting in substantial bodily harm
            constituting domestic violence, a C felony, and a count of mayhem,
            a B felony?
18
19          THE DEFENDANT: Yes, ma'am.

20          THE COURT: Have you read those charges?

21          THE DEFENDANT: Yes, ma'am.

22          THE COURT: Do you understand them?

23          THE DEFENDANT: Yes, ma'am.

24          THE COURT: Do you need me to read them out loud to you again in
            open court?

25          THE DEFENDANT: So count 2 and count 3 are gonna be ran
26          concurrent with the habitual criminal ten to twenty-five?

27          THE COURT: They're concurrent to each other, ten to twenty-five on
            each is the negotiation but consecutive to count 1.

28          THE DEFENDANT: So, I don't understand.

2

(*Id.* at 5–6.) The parties and the state district court thereafter clarified the terms of the Agreement, including the minimum and maximum terms of imprisonment and concurrent versus consecutive sentence possibilities for each count, and the state attorney explained that "the most time he's facing is eighteen to forty-five years," and "the least amount of time he'll be facing is twelve to thirty years" (*Id.* at 5–8.) At that point, Estes stated, "I understand what he's saying now," confirmed he wished to proceed, and entered guilty pleas in conformity with the Agreement. (*Id.* at 8–13.) The state district court accepted the guilty pleas, finding they were freely and voluntarily made, and that Estes had understood the nature of the offenses and the consequences of the pleas. (*Id.* at 13–14.)

### B.    Motion to Withdraw the Guilty Plea

Before sentencing, Estes filed a motion to withdraw his guilty pleas. (ECF No. 15-12). He contended: (1) there was a lack of communication with counsel; (2) he did not speak with counsel regarding the plea negotiation until the calendar call on the morning that he changed his plea; (3) he "felt rushed to make a decision as to the plea agreement" and "did not have sufficient time to make an intelligent decision as to the plea agreement"; and (4) he was not provided a copy of discovery. (*Id.* at 2, 5.)

Trial counsel testified at an evidentiary hearing on the motion to withdraw the guilty pleas that he and Estes had "continuously discussed negotiations from very early on" in their engagement and discussed the strengths and weaknesses of the case as well as the ability to defend it "[f]rom the beginning." (ECF No. 15-16 at 7, 21.) Counsel did not recall how many times he had spoken with Estes and admitted they had had difficulty communicating after Estes had moved from local detention to prison for another matter. (*Id.* at 7, 15–16.) Counsel did not recall seeing Estes at the prison, but said they had spoken on the telephone. (*Id.* at 15, 36.) Counsel said he and Estes had had "good communication" "face to face," even though counsel felt their communications had not always been crystal clear. (*Id.* at 8–9.)

Counsel testified that he had "had a range of what would be acceptable" to Estes, including minimum parole eligibility and maximum imprisonment time, and that the

1   sentence structure in the Agreement had been within those parameters. (*Id.* at 25, 33–

2   34.) Counsel stated the initial deadline for acceptance of the Agreement was April 11,

3   2018, and that he had spoken with Estes before that deadline about the overall picture

4   but had not gone into the details. (*Id.* at 13, 24–25.) Counsel said he had indicated to the

5   state attorney that Estes was interested in accepting the Agreement, and the state had

6   agreed to extend the Agreement deadline to the April 16, 2018 calendar call because the

7   parties did not believe the case could be placed on the court calendar before that date.

8   (*Id.* at 13–14.)

9         Counsel testified that Estes had first seen the written Agreement on the date of the

10  calendar call when Estes had entered his guilty pleas. (*Id.* at 14.) Counsel stated they

11  had gone over the terms of the written Agreement, but "it was confusing" because the

12  Agreement discussed the charges in reverse order, and counsel claimed Estes had

13  helped him understand the Agreement. (*Id.* at 31–33.) Counsel said Estes had wanted

14  more time to consider the Agreement, but counsel had informed Estes that the offer would

15  expire on April 16, 2018, if not accepted that day. (*Id.* at 25–26.) Counsel had told Estes

16  that if the offer was not accepted, "there would be no choice" but to go to trial. (*Id.* at 27-

17  28.) However, counsel had also told Estes he thought he could obtain a short extension

18  of time for trial. (*Id.* at 28–29.) Counsel said he had asked the state attorney to state the

19  terms of the Agreement on the record during the change of plea hearing to ensure a clear

20  statement of the Agreement's terms. (*Id.* at 9.)

21        Estes testified at the evidentiary hearing on the motion to withdraw his guilty pleas

22  that he had been to prison on three separate occasions for convictions entered under

23  plea deals but, unlike the Agreement in this case, he had understood those prior plea

24  deals. (*Id.* at 47–48.) Estes said he had only met with counsel "[o]ne time" at the Clark

25  County Detention Center and had spoken to counsel "[m]aybe three times" on the

26  telephone. (*Id.* at 35–36.) Estes admitted he had spoken with counsel each time they

27  attended court, including at the January evidentiary hearing concerning the admission of

28  prior acts evidence for Estes's anticipated trial, where they also discussed plea

1   negotiations. (*Id.* at 11, 39–40, 53.) Estes did not recall counsel speaking with him about
2   the Agreement before the calendar call and said he had not known the terms of the plea
3   offer before that time. (*Id.* at 36, 39.)

4          Estes said counsel had told him that if he didn't take the deal, the judge would
5   likely deny a continuance because the case had been underway for two years, during
6   which the parties had many continuances. (*Id.* at 38.) Estes said he had told counsel at
7   the January evidentiary hearing that he would have accepted "8 to 20 and 2 to 10" and
8   testified that this was what he had expected at the April calendar call. (*Id.* at 53–54.) Estes
9   had believed the plea offer was for a sentence of "10-to-25 with 2-to-20 concurrent with
10  the 10-to-25," that he had had difficulty understanding the Agreement as written, that he
11  had not known the sentences would be consecutive, and that the ultimate plea offer was
12  not within the range that he had told counsel was acceptable to him. (*Id.* at 36–38, 41.)
13  Estes testified that he had admitted to the state district court that he had understood the
14  Agreement because counsel had explained that if he lost at trial, he could get a life
15  sentence, and he did not "want to end up . . . in prison for the rest of his life for beating
16  someone up." (*Id.* at 48, 55.)

17         Recordings of Estes's jail calls to his brother were admitted into evidence, in which
18  Estes allegedly told his brother that others at the prison had told him the Agreement
19  required too many years of imprisonment. (*Id.* at 43–44, 57–59.) The state district court
20  listened to the jail calls and denied the motion to withdraw the guilty pleas. (ECF No. 15-
21  17 at 3, 11–14.) The state district court subsequently sentenced Estes to an aggregate
22  term of imprisonment for 18 to 45 years. (ECF No. 15-18 at 3.)

23         **C.    Postconviction Proceedings**

24         Estes did not directly appeal his convictions. (ECF No. 15-20 at 4.) Estes filed a
25  *pro se* state postconviction petition. (*Id.*) The state district court denied Estes's petition.
26  (ECF No. 16-6.) Estes appealed, and the Nevada Court of Appeals affirmed. (ECF No.
27  16-19.) Estes initiated this federal habeas corpus proceeding *pro se* on August 4, 2021,
28  raising three grounds for relief. (ECF No. 7.)

**III.    DISCUSSION**

       **A.    Motion for Leave to File Exhibit Under Seal (ECF No. 17)**

       Respondents seek leave to file under seal one document in support of their Motion to Dismiss Estes's Petition: Exhibit 27, Petitioner's Presentence Investigation Report (ECF No. 19 ("Exhibit 27" or "PSI")), dated May 18, 2018. (ECF No. 17.) Under Nevada law, the PSI is "confidential and must not be made a part of any public record." NRS § 176.156(5). Having reviewed and considered the matter in accordance with *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), and its progeny, the Court finds that a compelling need to protect Estes's safety, privacy, and/or personal identifying information outweighs the public interest in open access to court records. Accordingly, the Motion for Leave to File Exhibit Under Seal (ECF No. 17) is granted, and Exhibit 27 (ECF No. 19) is considered properly filed under seal.

       **B.    Motion to Dismiss (ECF No. 13)**

       Respondents filed a Motion to Dismiss, claiming all three grounds of the Petition are unexhausted. (ECF No. 13.)

       **1.    Legal Standard—Exhaustion**

       A petitioner must exhaust state court remedies for a federal habeas corpus claim before presenting that claim to the federal courts. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement ensures the state courts, as a matter of comity, will have the first opportunity to address and correct alleged violations of federal constitutional guarantees. *See Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). "A petitioner has exhausted his [or her] federal claims when he [or she] has fully and fairly presented them to the state courts." *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999)). Full and fair presentation requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief. *See Scott v. Schriro*, 567 F.3d 573, 582–83 (9th Cir. 2009) (citing *Picard v. Connor*, 404 U.S. 270, 278 (1971)). To satisfy the exhaustion requirement, a claim must have been raised

1    through one complete round of either direct appeal or collateral proceedings to the highest

2    level of review available in state court. *O'Sullivan*, 526 U.S. at 844–45.

3         "In the exhaustion context, the Supreme Court has admonished lower courts that

4    the complete exhaustion requirement is not intended to 'trap the unwary pro se prisoner'."

5    *Davis v. Silva*, 511 F.3d 1005, 1009 n.4 (9th Cir. 2008) (quoting *Slack v. McDaniel*, 529

6    U.S. 473, 487 (2000)). "More generally, the Court has held pro se pleadings to a less

7    stringent standard than briefs by counsel and reads pro se pleadings generously,

8    'however inartfully pleaded'." *Davis*, 511 F.3d at 1009 n.4 (quoting *Haines v. Kerner*, 404

9    U.S. 519, 520 (1972) (per curiam)); *see also Sanders v. Ryder*, 342 F.3d 991, 999 (9th

10   Cir. 2003) (noting *pro se* petitions are held to a "more lenient standard than counseled

11   petitions").

12        A petitioner may reformulate his claims so long as the substance of his argument

13   remains the same. *See Picard*, 404 U.S. at 277–78 ("Obviously there are instances in

14   which the ultimate question for disposition will be the same despite variations in the legal

15   theory or factual allegations urged in its support.") (internal citations and quotation marks

16   omitted). Thus, a petitioner may provide additional facts in support of a claim to the federal

17   habeas court so long as those facts do not fundamentally alter the legal claim that was

18   presented to the state courts. *See, e.g., Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)

19   (holding that supplemental evidence did not fundamentally alter the legal claim

20   considered by the state courts); *Weaver v. Thompson*, 197 F.3d 359, 364–65 (9th Cir.

21   1999) (holding that facts adduced at an evidentiary hearing did not change the factual

22   basis of a claim).

23        A claim is unexhausted, however, if additional alleged facts place the claim in a

24   significantly different and stronger evidentiary posture than the claim that was presented

25   to the state courts. *See Dickens v. Ryan*, 740 F.3d 1302, 1318–19 (9th Cir. 2014). "[T]his

26   rule allows a petitioner who presented a particular [ineffective assistance of counsel]

27   claim, for example, that counsel was ineffective in presenting humanizing testimony at

28   sentencing, to develop additional facts supporting that particular claim." *Poyson v. Ryan*,

7

1   879 F.3d 875, 895 (9th Cir. 2018) (quoting *Moormann v. Schriro*, 426 F.3d 1044, 1056

2   (9th Cir. 2005)). However, "[i]t does not mean . . . that a petitioner who presented an

3   ineffective assistance of counsel claim below can later add unrelated alleged instances

4   of counsel's ineffectiveness to his claim." *Id.*

5                   **2.      Legal Standard—Procedural Default and *Martinez***

6           Where a petitioner "has defaulted his federal claims in state court pursuant to an

7   independent and adequate state procedural rule," federal habeas corpus review "is barred

8   unless the prisoner can demonstrate cause for the default and actual prejudice as a result

9   of the alleged violation of federal law or demonstrate that failure to consider the claims

10  will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To

11  demonstrate cause, the petitioner must establish that some external and objective factor

12  impeded efforts to comply with the state's procedural rule. *See, e.g., Maples v. Thomas*,

13  565 U.S. 266, 280, 289 (2012) (finding cause to excuse procedural default due to attorney

14  abandonment but remanding for a determination of prejudice); *McCleskey v. Zant*, 499

15  U.S. 467, 497 (1991) (holding that, for cause to exist, the external impediment must have

16  prevented the petitioner from raising the claim). "[T]o establish prejudice, [a petitioner]

17  must show not merely a substantial federal claim, such that 'the errors . . . at trial created

18  a possibility of prejudice,' but rather that the constitutional violation 'worked to his actual

19  and substantial disadvantage.'" *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022) (citing

20  *Murray v. Carrier*, 477 U.S. 478, 494 (1986), and quoting *United States v. Frady*, 456 U.S.

21  152, 170 (1982)).

22          With one exception, Nevada's cause and prejudice standards are functionally

23  identical to the federal standards for cause and prejudice. *See Robinson v. Ignacio*, 360

24  F.3d 1044, 1052 n.3 (9th Cir. 2004); *Mitchell v. State*, 122 P.3d 33, 36 (Nev. 2006). That

25  exception is for a procedurally defaulted claim of ineffective assistance of trial counsel

26  when the cause for the default is the ineffective assistance or absence of postconviction

27  counsel in the initial postconviction proceedings in accordance with *Martinez v. Ryan*, 566

28  U.S. 1 (2012). The Nevada Supreme Court does not recognize *Martinez* as authority for

1   cause to overcome a state procedural bar under Nevada law. *Brown v. McDaniel*, 331

2   P.3d 867, 870–74 (Nev. 2014). Thus, a Nevada federal habeas petitioner who relies on

3   *Martinez*—and only *Martinez*—as a basis for overcoming a state procedural bar can

4   successfully argue that the state courts would hold the claim procedurally barred, but that

5   he nonetheless has a potentially viable argument for cause and prejudice under federal

6   law.

7          Cause to excuse a procedural default of an ineffective assistance of trial counsel

8   claim under *Martinez* exists where (1) the claim of "ineffective assistance of trial counsel"

9   was "substantial"; (2) the "cause" consisted of there being "no counsel" or only

10  "ineffective" counsel during the state collateral review proceeding; (3) the state collateral

11  review proceeding was the "initial" review proceeding for the "ineffective-assistance-of-

12  trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial

13  counsel [claim] . . . be raised in an initial-review collateral proceeding." *Trevino v. Thaler*,

14  569 U.S. 413, 423 (2013) (quoting *Martinez*, 566 U.S. at 18–19)). A claim is "substantial,"

15  if it has "some merit." *Martinez*, 566 U.S. at 14. A claim is "insubstantial" if "it does not

16  have any merit or . . . is wholly without factual support." *Id.* at 16.

17                     **3.     Ground 1[2]**

18          In Ground 1, Estes alleges trial counsel was ineffective in advising him of the

19  consequences of the Agreement because (A) counsel failed to visit him at the jail to

20  thoroughly explain the Agreement to him and instead presented it to him in court at

21  calendar call while Estes was shackled to another prisoner, giving him 10 minutes to

22  decide whether to accept the plea or proceed to trial; and (B) Estes has a substantial

23  mental health history. (ECF No. 7 at 3.) Estes claims counsel's ineffective assistance

24  resulted in Estes's failure to comprehend the Agreement and, but for counsel's ineffective

25  assistance, Estes would not have accepted the Agreement and would have instead gone

26  to trial. (*Id.*)

27

28

_____

[2]The Court subdivides Ground 1 for ease of reference.

1    Respondents contend Ground 1 is unexhausted because Estes alleges new facts

2  to support his ineffective assistance of counsel claim that do not correspond with the facts

3  presented in Estes's postconviction habeas appeal and because those new facts

4  challenge the conditions surrounding Estes's plea rather than his ability to understand the

5  Agreement. (ECF No. 13 at 4.) Respondents further contend that Estes's claim that

6  counsel was ineffective due to Estes's "substantial mental health history" is conclusory

7  and unexhausted. (*Id.* at n.2.)

8    As discussed below, the Court determines Ground 1 is partially exhausted and

9  partially technically exhausted but procedurally defaulted, subject to Estes's ability to

10  overcome the default under *Martinez*.

11                    **a.    Ground 1(A)**

12    The Court is persuaded that Estes fairly presented his claim that trial counsel was

13  ineffective in failing to adequately advise Estes about the consequences of the Agreement

14  because the state appellate court considered the claim. On appeal from the denial of the

15  state postconviction habeas petition, the Nevada Court of Appeals noted "Estes appeared

16  to argue his counsel was ineffective for advising him to enter a guilty plea even though

17  Estes was not able to understand the plea agreement and the consequences thereof."

18  (ECF No. 16-19 at 2–3.) The Nevada Court of Appeals analyzed the claim but held that

19  Estes failed to demonstrate counsel's performance had fallen below an objective standard

20  of reasonableness or a reasonable probability he would have refused to plead guilty and

21  would have insisted on proceeding to trial had counsel discussed the Agreement in a

22  different manner. (*Id.*) A state appellate court decision on the merits of a claim of course

23  exhausts the claim. *See Comstock v. Humphries*, 786 F.3d 701, 707 (9th Cir. 2015).

24    Respondents are correct that Estes's factual allegation that counsel presented the

25  Agreement to him while Estes was shackled to another prisoner with only 10 minutes to

26  consider it was not alleged in the state habeas appeal. (ECF No. 16-14.) However, the

27  fact that Estes was first presented with the written Agreement in court, shortly before the

28  hearing when he changed his plea, is part of the state court record. (*See* ECF No. 15-6

at 3–4). The newly alleged facts do not place Estes's ineffective assistance of counsel claim in a significantly different and stronger evidentiary posture than the claim presented to the state courts, do not contradict the evidence the state court already considered, and are not instances of ineffective assistance that are unrelated to Estes's claim.[3] Because the claim in Ground 1(A) was, and still remains, a claim that counsel's failure to properly advise Estes led to Estes's failure to understand the Agreement and resulting prejudice, the Court concludes the claim in Ground 1(A) is exhausted.

### b.    Ground 1(B)

The Court liberally construes Ground 1 of the *pro se* Petition to include a claim that counsel was ineffective in advising Estes concerning the consequences of the Agreement due to Estes's mental health history. (ECF No. 7 at 3.) The Nevada Court of Appeals declined to consider Estes's ineffective assistance of counsel claims based on Estes's state of mind, mental health, and competency, because those claims were not previously raised in the state district court. (ECF No. 16-19 at 4 (citing *McNelton v. State*, 990 P.2d 1263, 1275-76 (Nev. 1999).) Thus, the Court finds the claim in ground 1(B) is procedurally defaulted.

Respondents contend the Court should dismiss any claims in Ground 1 that are procedurally defaulted. (ECF No. 13 at 5, n.3.) However, if Estes can show good cause and prejudice, then the Court can excuse operation of the procedural default for the claim in Ground 1(B). Estes did not file an opposition to the Motion to Dismiss and does not otherwise assert *Martinez* as a basis to overcome his procedural default of the claim in Ground 1(B). However, Estes alleges trial counsel was ineffective, and the state court record shows Estes was not represented for his state postconviction proceedings and the factual basis concerning the claim is not wholly frivolous or without any factual basis.

---

[3]This is not to say the Court will consider evidence supporting the newly alleged facts if such evidence is not part of the state court record in existence at the time the state courts considered the claim. *See Shinn v. Ramirez*, 142 S. Ct. 1718, 1735 (2022) ("[Under § 2254(e)(2) . . . a federal court may order an evidentiary hearing or otherwise expand the state-court record only if the prisoner can satisfy § 2254(e)(2)'s stringent requirements.").

(ECF Nos. 7, 15-20, 16-14, 19-1 at 5.) Thus, the Court will defer ruling on the procedural default of the claim in Ground 1(B) until the merits of Ground 1 are fully briefed.

### 4.    Grounds 2 and 3

Grounds 2 and 3 allege trial counsel's unconstitutional ineffective assistance led Estes to accept the Agreement which, in turn, resulted in cruel and unusual punishment in violation of the Eighth Amendment. (ECF No. 7 at 5, 7.) Grounds 2 and 3 additionally allege trial counsel's ineffectiveness in failing to visit Estes at the jail to go over the Agreement and instead presenting the Agreement at calendar call was fundamentally unfair because it forced Estes to make an uninformed, rushed decision in a courtroom with no privacy and a nonexistent attorney-client privilege. (*Id.*)

Grounds 2 and 3 are unexhausted to the extent they raise Eighth Amendment claims as such claims were never fairly presented to the Nevada Court of Appeals in the postconviction appeal. (ECF Nos. 16-14, 16-19.) In his postconviction habeas appeal, Estes contended that the state district court violated his constitutional rights when it sentenced him as a habitual criminal because the Nevada habitual criminal statute violates federal due process under the Fifth, Sixth, and Fourteenth Amendments. (*Id.*) Estes's postconviction habeas appeal did not allege an Eighth Amendment violation for cruel and unusual punishment. (*Id.*) Estes's allegations in Grounds 2 and 3 of ineffective assistance of counsel in advising Estes about the consequences of the Agreement duplicate the claims in Ground 1(A). Thus, Grounds 2 and 3 are partially unexhausted and partially duplicative of Ground 1(A).

## IV.    OPTIONS FOR A MIXED PETITION

A federal court may not entertain a habeas petition unless the petitioner has exhausted all available and adequate state court remedies for all claims in the petition. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). A "mixed petition" containing both exhausted and unexhausted claims is subject to dismissal. *Id.*

In the instant case, the Court finds Grounds 2 and 3 are unexhausted to the extent Estes claims his sentence is cruel and unusual in violation of the Eighth Amendment.

Because Estes's Petition is mixed, he has three options: (1) file a motion to dismiss seeking partial dismissal of only the unexhausted claims; (2) file a motion to dismiss the entire Petition without prejudice in order to return to state court to exhaust the unexhausted claims; or (3) file a motion for other appropriate relief, such as a motion for a stay and abeyance, asking this Court to hold his exhausted claims in abeyance while he returns to state court to exhaust the unexhausted claims.

## V.    CONCLUSION

It is therefore ordered that Respondents' Motion to Dismiss (ECF No. 13) is granted in part and denied in part. The Motion is denied as to Ground 1 in the Petition as set forth in this order. The Court defers its decision as to whether Estes can establish cause and prejudice to overcome the default of the portion of Ground 1 that is procedurally defaulted without prejudice to Respondents' reassertion of defenses in their answer. The Motion is granted as to Grounds 2 and 3 in the Petition.

It is further ordered that by December 1, 2022, Estes must either: (a) file a motion to dismiss seeking dismissal of Grounds 2 and 3; (b) file a motion to dismiss the entire Petition without prejudice in order to return to state court to exhaust Grounds 2 and 3; or (c) file a motion for other appropriate relief, such as a motion for a stay and abeyance, asking this Court to hold his exhausted claims in abeyance while he returns to state court to exhaust Grounds 2 and 3.

It is further ordered that failure to timely comply with this order will result in the dismissal of Estes's mixed Petition without further advanced notice.

///
///
///
///
///
///
///

It is further ordered that Respondents' Motion for Leave to File Documents Under Seal (ECF No. 17) is granted.

It is further ordered that Exhibit 27 (ECF No. 19) is considered properly filed under seal.

It is further ordered that the Clerk of the Court is directed to substitute Calvin Johnson for Respondent Warden William Gittere.

DATED THIS 1st Day of November 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

14